# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VALERIE ANNETTE BARTEE,    ) | |
|                                               ) | |
| **Plaintiff**,             ) | |
|                                               ) | |
| v.                                         ) | Case No. CIV-19-371-JFH-SPS |
|                                               ) | |
| ANDREW M. SAUL,       ) | |
| Commissioner of the Social  ) | |
| Security Administration,       ) | |
|                                               ) | |
| **Defendant**.             ) | |

## REPORT AND RECOMMENDATION

The claimant Valerie Annette Bartee requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-eight years old at the time of the administrative hearing (Tr. 28, 185). She completed one year of college and has worked as a director of a child development center and receptionist (Tr. 21, 240). The claimant alleges that she has been unable to work since July 31, 2014, due to diabetes mellitus, vitamin d deficiency, rheumatoid arthritis, inflammatory polyarthropathy, joint pain, osteoporosis, osteopenia, malaise and fatigue, nausea, risk of fracture on the right wrist, depression, anxiety attacks, and lower back problems and pain (Tr. 239).

### Procedural History

On August 7, 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Angelita Hamilton held an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 17, 2019 (Tr. 15-22). The Appeals Council then denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step two of the sequential evaluation. She found that from the claimant's alleged onset date of July 31, 2014 to her date last insured of March 31, 2015, the claimant had the medically determinable impairment of rheumatoid arthritis (Tr. 18). Finding that this impairment did not significantly limit the claimant's ability to

perform basic work-related activities for 12 consecutive months, she found that the claimant did not have a severe impairment then concluded that the claimant was therefore not disabled (Tr. 17-18). Alternatively, the ALJ determined that the claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with no limitations, and that she was therefore able to return to her past relevant work (Tr. 19-22).

## Review

The claimant challenges the ALJ's step two findings, particularly alleging that the ALJ failed to account for her depression and problems with upper extremities, including surgery for carpal tunnel syndrome during the relevant time period. The undersigned Magistrate Judge agrees with the claimant's contention, and the decision should be reversed and remanded for further proceedings.

The relevant medical evidence reflects that, prior to the alleged onset date of July 31, 2014, Dr. Ronald Schatzman examined the claimant on August 31, 2012 (Tr. 290). His findings were largely within normal limits and he assessed the claimant with diabetes mellitus, hypertension, back pain, elbow pain, and wrist pain (Tr. 291-292).

On November 12, 2012, Dr. Shalom Palacio-Hollmon, Psy.D., conducted a mental status evaluation of the claimant (Tr. 298). Dr. Palacio-Hollmon assessed the claimant with adjustment disorder with anxiety and depressed moods, and panic disorder without agoraphobia (Tr. 300). Dr. Palacio-Hollmon then opined that the claimant's overall adjustment to stress was "fair," and that despite the presence of symptoms for several years the claimant often had full remission of her symptoms and responded well to medication.

However, Dr. Palacio-Hollmon stated that the claimant's depressive symptoms and anxiety would persist as long as she had stressors including financial strain due to unemployment. Moreover, she stated that the claimant's ability to deal with the public, supervisors, and co-workers was adversely affected by her depressive symptoms, particularly her desire to withdraw socially and interpersonally, although she found the claimant was able to understand, remember, and carry out both simple and complex instructions (Tr. 301).

Treatment notes from Dr. Pratap Tummala from December 2013 through early 2014 indicate that he diagnosed the claimant with polyarthralgia with no evidence of rheumatoid arthritis (Tr. 338). However, by March 2014, his treatment notes indicate her joint pains were associated with a positive rheumatoid factor and worsening symptoms for six to nine months (Tr. 349). He also assessed her with trigger finger at this appointment (Tr. 351). By July 7, 2014, his full-body assessment indicated that she had severe paraspinal spasms along with some joint tenderness (Tr. 356).

During the period between the alleged onset date and the date last insured, July 31, 2014 through March 31, 2015, testing revealed a trigger thumb and carpal tunnel syndrome of the claimant's left hand (Tr. 308, 384). On December 18, 2014, the claimant underwent release of the left trigger thumb and carpal tunnel release (Tr. 469). By January 26, 2015, her surgeon found that she had responded well but was reporting continued elbow pain and hip pain for which she needed follow up (Tr. 471).

Following the claimant's date last insured, an x-ray of the right hand on March 31, 2016 confirmed rheumatoid arthritis and osteopenia (Tr. 449). The claimant continued to report worsening symptoms related to rheumatoid arthritis, and treatment notes indicate

continued weakness in her right hand aggravated by lifting/carrying and pushing/pulling/gripping, as well as arthralgias and continued joint pain (Tr. 399). A musculoskeletal exam revealed a limited range of motion, bony deformity and tenderness, but a normal gait (Tr. 400). By May 16, 2017, the claimant's right wrist showed degenerative changes, as well as a fracture and nonunion of the right wrist (Tr. 468). On July 17, 2017, she was assessed with post-traumatic arthritis of the right wrist and severe post-traumatic right wrist radio-carpal (Tr. 486).

State reviewing physicians determined that the claimant's impairments were nonsevere (Tr. 73-74, 81-82).

In her written opinion, the ALJ found that the claimant had the medically-determinable impairment of rheumatoid arthritis, but found that her diabetes mellitus, vitamin D deficiency, vitamin D disorder, inflammatory polyarthropathy, osteoporosis, osteopenia, malaise and fatigue, nausea, high fracture risk in her right wrist, depression, anxiety, and low back pain were not medically determinable (Tr. 18). She found that, through the claimant's date last insured, the claimant did not have an impairment or combination thereof that limited her for twelve consecutive months (Tr. 18). Alternatively, the ALJ proceeded to step four the evaluation and found that the claimant had the RFC to perform the full range of work. At step four, the ALJ summarized the claimant's hearing testimony, as well as some of the medical evidence in the record (Tr. 19-21). She noted that examination findings related to the claimant's rheumatoid arthritis were within normal limits, and that prior to the alleged onset date the claimant had been diagnosed with polyarthralgia with no evidence of rheumatoid arthritis (Tr. 20). She stated that the

treatment record was minimal and treatment had been conservative, that the claimant walked without an assistive device, and that the claimant could still perform fine motor skills although she takes longer to do so (Tr. 20). She then determined the claimant could return to her past relevant work and was therefore not disabled (Tr. 21-22).

The claimant argues that the ALJ erred at step two of the sequential analysis by failing to even discuss her depression, polyarthralgia, hip and joint tenderness, paraspinal spasms, and elbow and wrist/hand pain, much less find that they were severe impairments. A claimant has the burden of proof at step two to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137, 146-147 (1987). This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the burden at step two is a *de minimus* showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

In this case, the claimant had a diagnosis for mental impairments, as well as repeated treatment for polyarthralgia, hip and joint tenderness, paraspinal spasms, and elbow and wrist/hand pain. The record further reflects that these impairments appeared to

limit what the claimant could do, specifically in relation to using her upper extremities. The undersigned Magistrate Judge notes that impairments are not required to be "orthopedic" in order to affect a claimant's ability to sit, stand, walk, lift, and carry. And here, the ALJ failed to even acknowledge the evidence in the record related to these impairments, choosing instead to focus on the fact that she was not officially diagnosed with rheumatoid arthritis until after the date last insured, rather than the evidence that *did* exist up to and including the relevant time frame. The undersigned Magistrate Judge is therefore satisfied that this evidence meets the claimant's *de minimus* burden of showing a severe impairment or combination of impairments at step two, noting that the standards for evaluation at step two and step four are significantly different and should not be conflated. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("The evidence . . . showed that she . . . had a consultation with a rheumatologist, Dr. Booth, for purposes of evaluating arthritis. He found that she had some osteoarthritis of the knees. He noted pain in her other joints but could not definitively assign an etiology to the pain at that time. Thus, under a *de minimus* standard, the ALJ's finding that arthritis was not a medically determinable impairment appears to be unsupported by substantial evidence.") [citations omitted].

Because the claimant met her burden of showing multiple severe impairments at step two, the decision of the Commissioner should be reversed and the case remanded for further analysis. Upon remand, the ALJ should evaluate the claimant's impairments, singly and in combination.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 23rd day of February, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**